THE UNITED STATES DISTRICT COURT
THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SEAN LEARY

        Plaintiff

vs.

Case No. 06-11029

HONORABLE VICTORIA ROBERTS
HONORABLE STEVEN D. PEPE

CITY OF PONTIAC, A MUNICIPAL CORPORATION,
DAN MIRACLE AND AARON SAILOR

        Defendants
_____/

### REPORT AND RECOMMENDATION

Plaintiff Sean Leary filed this action pursuant to 42 U.S.C. § 1983, accusing Defendant of violating his constitutional rights. In his complaint, Plaintiff claims violations of his Fourth, Fifth and Fourteenth Amendment rights and state tort law. On April 2, 2007, the remaining defendants, Dan Miracle and Aaron Sailor ("Defendants") filed a motion for summary judgment under Fed. R. Civ. P 56(b) claiming that qualified immunity shields them from damages liability in their individual capacities (Dkt. #22).[1] After granting Plaintiff an extension of time to respond (Dkt. #23), he filed his response in opposition to Defendants' motion on May 22, 2007 (Dkt. #25). All pretrial matters were referred pursuant to 28 U.S.C. § 636(b)(1)(A),(B) on August 28, 2006. This Report and Recommendation was deferred until efforts were made at consensual resolution between the parties on December 11, 2007. For the reasons below, it is

---

[1] Plaintiff has voluntarily dismissed the City of Pontiac (Dkt. # 28).

1

**RECOMMENDED** that Defendants' motion for summary judgment be **DENIED.**

## I. BACKGROUND

In the early morning hours of February 26, 2006, Defendants arrested Plaintiff for alleged trespass at a residence. It was some time after 2:00 a.m. that Plaintiff ended up at the residence after a night of alcohol consumption with a new acquaintance, Sarah Worley. Plaintiff met Ms. Worley earlier that evening at a bar after he and friends had attended a concert at the Palace of Auburn Hills. Ms. Worley, who was not the owner of the house but merely a house sitter, invited Plaintiff and a few of his friends to the house.

During the time that the group was at the house, Ms. Worley called the vacationing homeowners to notify them of the fact that she had guests at the house, which was unacceptable to the homeowners. They instructed her to have her guests leave their house.

In addition to their instructions to her, they called upon another friend, Mark Cuthbert, to see to it that the unwanted guests left the house. Mr. Cuthbert arrived at the house, told Ms. Worley that if the guests did not leave, he would call the police. Every guest except Plaintiff and Ms. Worley left the house. They, instead of leaving, went up to the second floor bedroom where Plaintiff fell asleep. Mr. Cuthbert called the police for assistance in evicting any remaining guests from the home.

When the Defendants arrived at the around 4:30 a.m., Ms. Worley told them that the Plaintiff was upstairs in the bedroom. Defendant Sailor went upstairs alone and unsuccessfully attempted to wake Plaintiff with verbal commands, because Plaintiff's sleep was deepened by alcohol consumption. Defendant Sailor began yelling and shaking the bed to awaken Plaintiff, which caused Defendant Miracle to join him to see if there was any trouble.

Because the verbal commands failed, the Defendants used physical means to awake the Plaintiff. They lifted him out of the bed by his arms to a standing position but Plaintiff reached for the covers to return to bed. Defendants pulled the comforter off of Plaintiff, in response Plaintiff grabbed the comforter back to cover himself (Dkt. # 25, Exhibit D, p. 65-66 & 69). Not during this time nor at any time during the interaction between the two parties did Plaintiff attempt to strike the Defendants or resist arrest, he apparently just wanted to be left alone to return to bed.

After a failed attempt at handcuffing Plaintiff, Defendants' use of force increased to include pressure on Plaintiff's windpipe, striking Plaintiff on the legs with a police issued baton and hitting Plaintiff about the face with their fists. Plaintiff testified at his deposition that he awoke when the officers were on top of him striking him in the face with an instrument and cutting off his breath with a pillow. He indicated that after he was handcuffed they continued to hit him several more times though he did not know the exact number, including pushing him into a wall (Dkt. # 25, Exhibit A, pg. 113-116.). The Defendants then took the Plaintiff out of the house dressed in only his boxer underpants and shirt into the cold February air where Plaintiff slipped and fell on the ice.

The Defendants took Plaintiff to Pontiac Osteopathic Hospital. Plaintiff sustained injuries as a result of the force used during the arrest, including a bloody nose and a fractured orbital bone (Dkt. #22, Ex G).

Ms. Worley, an eye witness to a portion of the arrest, observed the Defendants on top of Plaintiff in the bedroom (Dkt. #25, Ex B, pp. 21-24). Frightened by what she saw, she went downstairs to hide in a corner. The officers, after placing Plaintiff in the squad car, came back

for Ms. Worley. She tried to explain to them that she was waiting for a ride, but the Defendants did not listen to her plea, instead they handcuffed her and allegedly slammed her head onto the dryer. She too was taken outside into the cold, barefoot and in her pajamas. When she returned to the house the next day, she observed blood on the bed sheets where Plaintiff had been sleeping, a cracked coffee table and the bedroom in a state of disarray (Dkt. #25, Ex. B 32).

## II. ANALYSIS

### A. Standards Of Review

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). *See also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the non-moving party has

failed to make a sufficient showing on an essential element of her case with
respect to which she has the burden of proof.

Moreover, when a motion for summary judgment is filed, the adverse party may not rely "upon the mere allegations or denials of the adverse party's pleading, but . . . by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B. Factual Analysis

#### 1. *Qualified Immunity*

Government officials who perform discretionary functions are generally entitled to qualified immunity from individual liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is an affirmative defense and the plaintiff need not anticipate it in the complaint. *Gomez v. Toledo*, 446 U.S. 635 (1980). Once a defense of qualified immunity is asserted, the plaintiff must respond with "specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity." *Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir. 1995).

When considering the question of qualified immunity, the courts utilize a two-step analysis: (1.) whether the facts, considered in the light most favorable to the party claiming injury, establish that the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)) and (2.)whether that constitutional right was clearly established at the time in question. *Id.*; *Summar v. Bennet*, 1957

5

F.3d 1054, 1058 (6th Cir. 1998).

The Fourth Amendment protections against unreasonable use of force to effectuate an arrest require a showing that (1) a seizure occurred and (2) the force used to carry out the seizure was unreasonable. *Graham v. Connor*, 490 U.S. 386 (1989).

In the present case, Defendants fail to establish the absence of a genuine issue of material fact. The first prong of the *Graham* test as to a seizure is not in dispute because an arrest of Plaintiff occurred on February 26, 2006. The question under the Fourth Amendment narrows to an analysis of whether the amount of force used to effectuate the arrest was reasonable or excessive.

The *Graham* reasonableness standard used to determine whether the application of force was necessary under the Fourth Amendment is different from the qualified immunity standard of whether a reasonable official would understand that what he is doing violates that Fourth Amendment right. *Saucier,* 533 U.S. at 202*,* quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (2001). Yet, both are informed by the specific facts and circumstances facing the officer. *Graham* sets forth factors relevant to the merits of a constitutional excessive force claim, which include:

> 1. The severity of the crime at issue;
>
> 2. Whether the suspect poses an immediate threat to the safety of the Officers or others; and
>
> 3. Whether the suspect is actively resisting arrest or attempting to evade arrest by flight.

*Graham v. Connor*, 490 U.S. at 396. [2]

The *Graham* Court further noted that:

> The calculus of reasonableness must embody allowance for the fact that Police Officers are often forced to make split-second judgments in circumstances that are tense, uncertain and rapidly evolving about the amount of force that is necessary in a particular situation.

*Id.* at 396-97.

If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed. In such a case the use of force exceeded that allowed by the Fourth Amendment, but the reasonable, albeit mistaken officer, is entitled to qualified immunity from damages claims in a civil rights suit. Thus, the qualified immunity inquiry's concern is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. In addition to reasonable mistakes as to the perceived facts, there may be a reasonable mistake as to the application of a legal standard in a certain set of facts where reasonable police officers may differ as to the correct determination. Thus, an officer might correctly perceive all of the relevant facts, but have a reasonable, albeit mistaken, understanding as to whether a particular amount of force is legal in those circumstances. *Saucier,* 533 U.S. at 195. Officers are provided qualified immunity for reasonable mistakes as to the legality of their actions where "the mistaken belief was reasonable." *Id.* at 206. "Qualified immunity operates in this case, then, just as it does in others, to protect officers from the sometimes 'hazy border between excessive and acceptable force,' *Priester v. Riviera Beach,* 208 F.3d 919, 926-927 (11th Cir. 2000), and to ensure that

---

[2] These *Graham* standards are adopted in *Dunigan v Noble*, 390 F3d 486, 492 (6th Cir. 2004 ).

7

before they are subjected to suit, officers are on notice their conduct is unlawful." *Id.* Thus, in the Fourth Amendment context there is a gray area between that force which is clearly excessive and that which is clearly reasonable. Defendants argue that, at a minimum, this is such a case and they are entitled to qualified immunity even if this Court were to determine that the amount of force actually used was unreasonable under the circumstances.

Yet, for the legal standard to be clearly established there need not be a case "on all fours" with the facts in dispute. "Assuming, for instance, that various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand, the officer would not be entitled to qualified immunity based simply on the argument that courts had not agreed on one verbal formulation of the controlling standard." *Saucier*, 533 U.S. at 202-03.

Thus, in the present case, we must determine first whether the facts, considered in the light most favorable to Plaintiff, establish that the officers' conduct violated the Fourth Amendment and second whether a reasonable officer in the situation of Defendants Miracle and Sailor would have recognized that the amount of force being used exceeded that which was necessary under the circumstances.

In *Saucier*, the Supreme Court found that qualified immunity was appropriate because the actions undertaken by the officers, even assuming they were unconstitutional, were not so egregious that a reasonable officer would know the force used was unreasonable under the circumstances. In *Saucier*, Plaintiff Elliot Katz, an animal rights advocate, attended a public event where Vice President Gore was to speak at the Presidio Army Base in San Francisco. He sat in the front row, with a waist high fence separating him from the speaker's platform. When

8

the Vice President began his speech, Katz unfurled a protest flag he had concealed in entering the area and approached the fence. Saucier, a military policeman, and another officer intercepted Katz as he placed his banner over the fence.

> Each officer had one of respondent's arms, half-walking, half-dragging him, with his feet "barely touching the ground." App. 24. Respondent was wearing a visible, knee-high leg brace, although petitioner later testified he did not remember noticing it at the time. Saucier and Parker took respondent to a nearby military van, where, respondent claims, he was shoved or thrown inside.

*Saucier*, 533 U.S. at 198.

On these facts the Supreme Court found that the single defendant Saucier was entitled to summary judgment motion on qualified immunity under the second prong of the two-part qualified immunity test. The Court noted that:

> [a] reasonable officer in petitioner's position could have believed that hurrying respondent away from the scene, where the Vice President was speaking and respondent had just approached the fence designed to separate the public from the speakers, was within the bounds of appropriate police responses.
>
> [Saucier] did not know the full extent of the threat respondent posed or how many other persons there might be who, in concert with respondent, posed a threat to the security of the Vice President. There were other potential protesters in the crowd, and at least one other individual was arrested and placed into the van with respondent. In carrying out the detention, as it has been assumed the officers had the right to do, petitioner was required to recognize the necessity to protect the Vice President by securing respondent and restoring order to the scene. It cannot be said there was a clearly established rule that would prohibit using the force petitioner did to place respondent into the van to accomplish these objectives.

\* \* \*

> In the circumstances presented to this officer, which included the duty to protect the safety and security of the Vice President of the United States from persons unknown in number, neither respondent nor the Court of Appeals has identified any case demonstrating a clearly established rule prohibiting the officer from acting as he did, nor are we aware of any such rule. Our conclusion is confirmed by the uncontested fact that the force was not so excessive that respondent

9

suffered hurt or injury. On these premises, petitioner was entitled to qualified immunity, and the suit should have been dismissed at an early stage in the proceedings.

*Id.* at 208-209.

In *Saucier*, the Supreme Court did not specifically decide whether the amount of force used by Saucier violated the Fourth Amendment. The issue before the Supreme Court was whether the Ninth Circuit was correct in its decision that once it was determined that the reasonableness standard for Fourth Amendment analysis was clearly established under the *Graham* decision, there was no need to separately address the objective reasonableness question for the officers under qualified immunity because the Ninth Circuit considered those objective reasonableness questions as identical for the Fourth Amendment analysis and for the qualified immunity analysis.[3] It was on this legal issue the Supreme Court disagreed and noted a gray zone where a law enforcement officer may reasonably be mistaken about what force is reasonably necessary and appropriate in a certain circumstance. Yet, it surely was the relatively mild use of force by Saucier and his fellow officer in a potentially dangerous situation involving the personal safety of the Vice President at a public event that contributed to the Supreme Court's determination that Saucier was entitled to qualified immunity because reasonable officers could differ over whether the amount of force used was objectively reasonable or

---

[3] "The court then concluded that the second step of the qualified immunity inquiry and the merits of the Fourth Amendment excessive force claim are identical, since both concern the objective reasonableness of the officer's conduct in light of the circumstances the officer faced on the scene." *Saucier,* 533 U.S. at 199-200 . "The sole question, then, is whether the force used violated a clearly established Fourth Amendment protection so that petitioner was not entitled to immunity."*Id*. at 207.

1.

excessive.[4]

Other than the small overlap that both Elliot Katz and Plaintiff were allegedly shoved into the squad car, there is little similarity between the *Saucier* situation and the present one. Defendants were on a police run to investigate the allegation of a trespass in progress, a low severity misdemeanor. M.C.L. § 750.552. Plaintiff clearly entered the premisses with the consent of the person who was left in charge. There is some question if Plaintiff was specifically instructed to leave before he went upstairs and fell asleep. Unlike Katz, he had undertaken no provocative act under the circumstances. When the Defendants arrived on the scene, Plaintiff was in no position to pose a threat to the Defendants because Plaintiff was asleep at the initial contact and remained in a bit of stupor during the arrest sequence. Viewed most favorably to Plaintiff, he never threatened or made any effort to assault Defendants or anyone else. After verbal attempts to wake the sleeping Plaintiff, the force utilized by Defendants escalated. Defendants implemented waking tactics of striking the Plaintiff's face, striking him with a metal baton to the legs and choking. These methods and others, while proving effective in achieving the goal of waking Plaintiff and then of arresting him, also resulted in significant injury to Plaintiff. Plaintiff suffered from a fractured orbital bone and bloody nose. Plaintiff asserts he also has residual peripheral vision problems from the injuries, a scar on his face (Dkt. # 25, Exhibit A, pg. 80-82 ) and experiences frequent headaches  (Dkt. # 25, Exhibit A, pg.53-57). In *Saucier* Katz suffered no "hurt or injury." *Saucier,* 533 U.S.at 209.

Defendants' argument is based on inferences that the force used was necessary and

---

[4] *Saucier* did not involve the other Fourth Amendment question of whether there was probable cause to arrest Mr. Katz but merely whether the force used violated a clearly established Fourth Amendment standard. *Ibid.*

proportionate to the threat posed by Plaintiff. They argue that because Plaintiff was not fully awake when the Defendants first made contact with him, he likely did not cooperate with the Defendants' attempts to arrest him. Defendants point to Plaintiff's size and strength as justification for their use of force, though the Defendants do not demonstrate how Plaintiff's physical characteristics in any way affected their decision to utilize the force they did. In *Saucier* the amount of force used was substantially less than what appears here, and the potential risk was clearer than asserted here. Additionally, in this case, if the facts are viewed in the light most favorable to the Plaintiff as must be done on this motion, Ms. Worley was also treated in a similarly aggressive and disrespectful manner when the Defendants allegedly slammed her head onto the dryer while she was handcuffed. Yet, it could hardly be argued that her stature was a threat to justify such rough treatment. On these facts, there are disputed issues of fact such that this Court cannot determine on this motion that Plaintiff posed such a threat to the Defendants that a law enforcement officer might reasonably believe the degree of force used was reasonable.

Defendants state in their motion that "[h]ad Plaintiff cooperated and left the premises when given instructions to do so by authorities, he probably would not even be arrested." (Dkt. #22, p. 18). The record is thin that such an option was even presented to Plaintiff, and given questions about the then very sleepy Plaintiff, a reasonable jury could resolve this disputed question of fact against Defendants and find that Plaintiff did not refuse to avail himself of any such offer. Resolving all disputed issues against the moving party, a reasonable jury could conclude that Plaintiff posed no threat to the Defendants' or the public's safety justifying the degree of force used, that he was not given a reasonable opportunity merely to walk away, and

12

the steep escalation of violence directed toward Plaintiff was unreasonable and clearly so under the circumstances.

Further, the Defendants stress Plaintiff's limited recollection of the altercation to stress that Plaintiff cannot refute Defendants' claim that they acted reasonably under the circumstances. On the contrary, Plaintiff, in his response, set forth facts that put Defendants' assertion that reasonable force was used at issue; Ms. Worley's eye witness testimony, Plaintiff's recollection of being pushed into the wall, beaten upon the head and being struck in the face with an instrument and the resulting injuries. A trier of fact could also consider the manner in which Defendants arrested the nonthreatening Ms. Worley to gain a sense of the totality of the circumstances that evening – her handcuffing, her head hitting the dryer, her being taken outside in a Michigan February, barefoot and wearing only pajamas.

Defendants' arguments are best left for the trier of fact. There are disputed issues of material fact on which a reasonable jury could determine excessive force of such a magnitude that no reasonable officer under the circumstances could conclude was objectively reasonable. The conclusion Defendants wish this Court to draw that they utilized reasonable force during the arrest is just one of many possible conclusions a trier of fact could reach. Defendants' submissions and the inference they seek to have drawn from them are not suitable for resolution on summary judgment because there is a genuine issue as to the material fact of the reasonableness of force utilized in this arrest. To extend *Saucier* to a case such as this would substantially erode the protections granted by the Fourth Amendment. Consequently, Defendants are not entitled to qualified immunity on the 42 U.S.C. § 1983 claim.

## 2. Gross Negligence

Similarly, Defendants are not entitled to qualified immunity for the state law claim of Gross Negligence. Qualified immunity is limited when an officer's conduct amounts to gross negligence and it is the proximate cause of the injury. MCL 691.1407(2)(c). Gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(7)(a). The gross negligence must be the proximate cause of the injury, which is the most immediate, efficient and direct cause preceding the injury. *Robinson v City of Detroit*, 462 Mich 439, 462 (2000).

While Police officers are given a wide degree of discretion to determine what type of action will best ensure the safety of the individuals involved, the cessation of unlawful conduct, and the apprehension of wrongdoers, once the police determine what type of action to take, "the execution thereof must be performed in a proper manner, *e.g*., the arrest must be made without excessive force . . ." *Oliver v Smith*, 269 Mich App 560, 565 (2006) (quoting *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 660 (1984)).

Questions of fact exist as to whether the arrest in this case was made in a proper manner without excessive force. Plaintiff asserts that Defendants when making the arrest struck the Plaintiff several times with fists and a metal baton, some of these strikes occurred even after the Plaintiff had been handcuffed. Defendants argue by way of inference that Plaintiff probably resisted arrested because being only half-awake during the arrest he might have thought that he was being attacked and thus responded by defending himself. The inference Defendants wish for this Court to draw is one that should be reached by a trier of fact for there is nothing in the record to indicate that Plaintiff resisted arrest or posed any significant threat to the Defendants

during their interaction. Facts as presented by the Plaintiff put into question of excessive force at issue and thus the motion for summary judgment on the count of gross negligence is denied.

### 3. Assault and Battery

Similarly, the motion for summary judgment on the state claim of assault and battery should be denied. An individual employee's intentional torts are not shielded by the state's governmental immunity statute. *Sudul v Hamtramck,* 221 Mich App 455, 458 (1997). The courts have, however, "recognized that actions that would normally constitute intentional torts are shielded from liability if those actions are justified because there were objectively reasonable under the circumstances. *Wilson v City of Detroit*, 2007 Mich App LEXIS 616 (2007) (citing *Van Vorous v Burmeister*, 262 Mich App 467, 483 (2004). In *Wilson*, the court evaluated the arresting officers use of force relative to the resistance exhibited by the plaintiff and concluded that the use of force was not excessive. The present case can be distinguished from the *Wilson* case because of the lack of compelling evidence that Plaintiff resisted arrest or posed a threat to the Defendants, and if believed, a fact finder could conclude that Defendants hit the Plaintiff with their fists and batons causing bruising, a bloody nose and a broken bone. Consequently, summary judgment as to the count of assault and battery should be denied.

## III. RECOMMENDATION

For the reasons noted above, it is **RECOMMENDED** that Defendants' motion for summary judgement be **DENIED.** The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474

U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Date: January 9, 2008                                   s/Steven D. Pepe
Ann Arbor, Michigan                              United States Magistrate Judge

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing *Report and Recommendation* was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 9, 2008.

s/ Alissa Greer
Case Manager to Magistrate
Judge Steven D. Pepe
(734) 741-2298