**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**SEAN LEARY,**

        **Plaintiff(s),**        **CASE NUMBER: 06-11029
HONORABLE VICTORIA A. ROBERTS**

v.

**CITY OF PONTIAC, a Municipal
corporation, DAN MIRACLE, and
AARON SAILOR,**

        **Defendant(s).**
_____/

**ORDER**

**I.    INTRODUCTION**

This matter is before the Court on a Report and Recommendation ("R&R") by Magistrate Steven D. Pepe regarding Defendants' Motion for Summary Judgment. Magistrate Pepe recommends that Defendants' motion be denied. The Court **ADOPTS** the Magistrate's recommendation.

**II.    BACKGROUND**

Plaintiff Sean Leary brings this action against Defendants Dan Miracle and Aaron Sailor who are police officers for the City of Pontiac. Plaintiff alleges Defendants used excessive force while placing him under arrest. The underlying facts are accurately summarized in the Magistrate's R&R, but they are repeated here to a limited extent.

Sarah Worley, who is not a party to this action, met Plaintiff at a bar. She invited him and his friends to a home where she was housesitting. Shortly after they arrived,

1

the homeowners found out Worley was entertaining and instructed her to have all of her guests leave. Worley complied with respect to all of the guests except Plaintiff, with whom she retired to bed. Shortly thereafter, Mark Cuthbert, a friend of the homeowners, arrived. The homeowners had called Cuthbert and asked that he go over to ensure their wishes were carried out. Cuthbert advised Worley that she and all of her guests had to leave. When Worley refused to recognize Cuthbert's claimed authority, he called the police.

Without verifying Cuthbert's claims with the homeowners, Defendants responded to the call and ordered Worley to leave. When she advised that Plaintiff was upstairs sleeping, the officers went up to evict him as well. Plaintiff, however, was intoxicated and sleeping. He did not awaken when the officers made multiple verbal commands that he get up. And, when they attempted to physically lift him from the bed, he would not cooperate.

When the officers lifted Plaintiff up by his arms to a standing position, he reached for the bedcovers and tried to pull away and lay back down. Sailor Dep. at pp. 49-50. Miracle says Plaintiff began to ask why they were "doing this" and telling them to leave him alone. Miracle Dep. at 67-68. As Sailor grabbed Plaintiff's arm to stop him, he says Plaintiff threw an elbow in order to extricate himself and lay down. Sailor Dep. at 50. Defendants then grabbed Plaintiff's arms, pushed him faced down onto the bed, and attempted to cuff him on a misdemeanor charge of trespassing. To free himself, Plaintiff pulled his hands away, threw his elbows, and put his hands underneath him.

Because Plaintiff did not respond to their commands to cease his resistance, Defendants admit they began to punch Plaintiff with their fists. Sailor punched Plaintiff

2

in the head and face, and used an asp to strike him twice on his leg. *Id* at 51-52. Miracle punched him in the side and on the leg. Miracle Dep. at p. 76-77, 79. Sailor and Miracle say Plaintiff never attempted to punch, kick or otherwise attack them; his resistance was limited to pushing and pulling away to avoid being handcuffed.

Defendants eventually overpowered Plaintiff. Sailor applied pressure to Plaintiff's windpipe twice and, after a continued struggle, he and Miracle cuffed Plaintiff. Once cuffed, Miracle says Plaintiff did not continue to resist. *Id* at 84.

Plaintiff has a limited memory of the events. He does not recall the officers' initial verbal commands for him to get up. Plaintiff's first memory is waking up with someone on top of him, having trouble breathing, and being beaten in the face with an instrument while his hands were held behind him. Leary Dep. at pp. 106-107. He did not know who was hitting him or why and says he attempted to use his hands to protect his head. *Id*. But, Plaintiff said he clearly recalls being struck in the head several times after he was handcuffed. *Id* at 107, 110-111, 113-114. Plaintiff also recalls Defendants throwing him into a wall as they escorted him out of the house. *Id* at 116.

Worley remained downstairs when the officers went up to get Plaintiff. She only went upstairs briefly after hearing noises that sounded like a scuffle. She saw the Defendants on top of Plaintiff, got scared, and ran back downstairs. She did not see or hear anything else.

After his arrest, Plaintiff was taken to Pontiac Osteopathic Hospital. He had a bloody nose and an orbital bone fracture. Plaintiff also says he has peripheral vision problems, a scar on his face which looks like a permanent black eye, and suffers from frequent debilitating headaches several times per week.

In his Complaint, Plaintiff alleges excessive force in violation of 42 U.S.C. §1983 and state law claims of gross negligence and assault and battery. Defendants request summary judgment on all claims. Defendants argue they are entitled to qualified and governmental immunity on the §1983 and gross negligence claims, respectively, because the force used was necessary and reasonable under the circumstances, considering Plaintiff's size (6'4" and 250 pounds according to Defendants' reports) and his resistance to attempts to place him under arrest. The Magistrate found that reasonable jurors could disagree and find that the forced used exceeded what was necessary under the circumstances. Defendants object, arguing that the Magistrate failed to factor in undisputed facts which justify the force used and improperly shifted the burden of proof on the question of qualified immunity.

## III. APPLICABLE LAW AND ANALYSIS

The record supports the Magistrate's ultimate conclusion that summary judgment should be denied on all of Plaintiff's claims.

### A. 42 U.S.C. §1983

42 U.S.C. § 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen . . . the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"To state a cause of action under §1983, a plaintiff must allege the deprivation of a right secured by the United States Constitution or a federal statute by a person who was acting under color of state law." *Spadafore v Gardner*, 330 F.3d 849, 852 (6th Cir.

4

2003). Defendants do not dispute they were acting under color of law, and Plaintiffs allege that Defendants violated his Fourth Amendment right not to be subjected to the excessive use of force. But, Defendants deny any constitutional violation and assert they are entitled to qualified immunity in any event.

Where the defense of qualified immunity is raised, the Court must first determine whether a constitutional violation has been established:

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry.
>
> * * *
>
> If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

*Saucier v Katz*, 533 U.S. 194, 201 (2001)(internal citation omitted).

### i. There is a Question of Fact Regarding Whether Defendants used Excessive Force Against Plaintiff

Claims of excessive force by police officers during an arrest must be analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v Connor*, 490 U.S. 386, 395 (1989). In *Graham*, the Court stated that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id* at 396. Therefore, when analyzing such a claim the Court must consider: 1) the severity of the crime; 2) whether the suspect poses an immediate threat to the safety of officers or others; and 3) whether the suspect

is actively resisting arrest or attempting to flee. *Id.*

The trial court must determine "whether the officers' alleged actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id* at 397. Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id* at 396. A plaintiff need not suffer serious or permanent injury. *Johnson v City of Ecorse*, 137 F.Supp.2d 886, 892 (E.D. Mich. 2001)(plaintiff's complaint of injury to his wrist from tight handcuffs sufficient). However, there must be more force than "than the mere technical battery that is inextricably a part of any arrest." *Id.*

Plaintiff alleges excessive force at three points: 1) during attempts to handcuff him; 2) after he was handcuffed; and 3) as he was escorted out. At each point, Plaintiff raises a question of fact regarding whether Defendants used excessive force against him.

First, reasonable jurors could disagree over the amount of force used to handcuff Plaintiff and whether it was proportional to his resistance and, therefore, objectively reasonable. It is undisputed that Plaintiff resisted Defendants' efforts to cuff him. But, Plaintiff was unarmed, visibly inebriated and disoriented, and Defendants admit that his resistence, although persistent, was limited primarily to pushing and pulling to keep his hands away from them. Considering that Defendants were only attempting to effect a misdemeanor arrest and Plaintiff's relatively benign resistance, jurors could disagree regarding whether Defendants' eventual response with their fists and nightsticks was proportional to his resistance and, therefore, reasonable.

6

For his second and third claims, Plaintiff was unequivocal in his assertion that one or both Defendants continued to strike him in the head after he was handcuffed, and that he was assaulted as he was escorted outside. Plaintiff admits he is unclear on the details or precise sequence of events, but he was consistent in his claim that he was hit several times after he was cuffed, and that he was thrown or tossed into a wall as he left the residence. Leary Dep. at pp. 106-107, 110-111, 113-114, 116.

Citing a small portion of Plaintiff's testimony, Defendants argue that Plaintiff admitted he could not clearly distinguish between the point at which he was handcuffed and when he was not and, therefore, his claim that he was hit after he was cuffed is purely speculative. When the exchange Defendants' cite is viewed in its entirety, there is no merit to this claim:

> Q: But before they could actually get the cuffs on you, they have to keep your hands back there, against your efforts to bring them forward to protect your head, by some other means. Correct?
> A: Correct.
> Q: Are you able to remember distinctly when it changed from them using their force --
> A: No, I cannot.
> Q: -- let me finish the question -- the force, their arms, to keep your hands back there to the point when the cuffs were actually on? Do you remember when it changed from being uncuffed to cuffed?
> A: In my mind, when it happened, I remember the fear in my mind as to what is going to -- you know, what is going to happen now. I mean I'm still being struck and there is nothing I can do to protect myself. I remember that fear.
> Q: And from that fear, the premise of that fear is, can't get my hands to protect myself; they're back there behind me?
> A: Correct.
> Q: And that could be because they're holding you there while they're trying to cuff you, or that could be because they're cuffed, or both?
> A: Because they were cuffed. I distinctly remember the

7

difference between being cuffed and uncuffed.

Leary Dep. at pp. 109-110.

Plaintiff's claim that, after he was handcuffed and (by Miracle's admission) offering no further resistance, Defendants continued to strike him and threw or tossed him into a wall, is sufficient to raise a question of fact regarding whether the Defendants used more force than necessary under the circumstances against Plaintiff. *See Phelps v Coy*, 286 F.3d 295, 301 (6th Cir. 2002)(finding Fourth Amendment violation where the defendant officer allegedly continued to beat plaintiff after he was detained and presented no threat).

### ii. Defendants are not Entitled to Qualified Immunity as a Matter of Law

Even when a constitutional right has been infringed, government officials who perform discretionary functions are generally entitled to qualified immunity and are protected from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In other words, qualified immunity is appropriate either on the basis that the right allegedly violated was not at the time "clearly established," or if "clearly established," was one a "reasonable" person in the defendant's position could have failed to appreciate would be violated by his conduct. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The court must employ a standard of objective reasonableness and analyze claims of immunity on a fact-specific, case-by-case basis to determine whether a reasonable official in the officer's position could have believed his or her conduct was

lawful, in light of clearly established law and the information he possessed. *Id*; *Adams v Metiva*, 31 F.3d 375, 386 (6th Cir.1994) ( "[T]he question is whether any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct.") (*quoting Brandenburg v Cureton*, 882 F.2d 211, 215 (6th Cir.1989)).

The ultimate burden rests with Plaintiff to show Defendants are not entitled to qualified immunity. *Gardenhire v Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). However, a "defendant bears the initial burden of coming forward with facts to suggest that he acted within the scope of his discretionary authority during the incident in question." *Id*. Thereafter, the burden shifts to the plaintiff to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood he was under an affirmative duty to refrain from such conduct." *Id*.

Whether a Defendant is entitled to qualified immunity is usually a question of law for the court to decide. *Brandenburg*, 882 F.2d at 215. But, when the relevant facts are in dispute, the court must leave the factual findings to the trier of fact:

> [S]ummary judgment would not be appropriate if there is a factual dispute (i.e., a genuine issue of material fact) involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights.

*Gardenhire*, 205 F.3d at 311. See also *Adams,* 31 F.3d at 387 ("[T]he jury becomes the final arbiter of [defendant's] claim of immunity, since the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury.").

Defendants are not entitled to qualified immunity as a matter of law. Plaintiff satisfied the first prong of the analysis because the Fourth Amendment right to be free

from excessive force is clearly established. *Adams*, 31 F.3d at 386; *Johnson,* 137 F.Supp.2d at 893. Under the second prong, the Court must determine whether a reasonable officer in Defendants' position would have known that their alleged actions violated clearly established rights.

The relevant facts with respect to what occurred during Defendants' attempts to handcuff Plaintiff are not in dispute and they do not support Defendants' claim of governmental immunity. The Court is not persuaded that Plaintiff's resistance warranted the force Defendants used to subdue him. The Court agrees it was necessary for the officers to use some force to subdue and restrain Plaintiff, even if he was not consciously resisting efforts to handcuff him. But, punching Plaintiff multiple times with closed fists in his head and body and striking him with nightsticks was not an objectively reasonable response under the circumstances, inasmuch as he was unarmed, apparently intoxicated and disoriented, and Defendants admit his resistance was limited to pushing and pulling away from them in order to evade their efforts secure his hands behind his back.

The Court cannot decide whether Defendants are entitled to qualified immunity for their alleged gratuitous assaults on Plaintiff after he was handcuffed because Plaintiff's claims turn on disputed questions of fact--Plaintiff says he was struck after he was cuffed and thrown into a wall; Defendant denies both claims. *See Gardenhire*, 205 F.3d at 311. If a jury believes Plaintiff, Defendants are not entitled to qualified immunity.

Defendants' motion for summary judgment on Plaintiff's §1983 claim is denied.

**B.** **Gross Negligence/Governmental Immunity**

"Under the governmental immunity act, [M.C.L. §691.1407], a governmental

10

employee is not liable in tort for personal injuries as long as the employee's 'conduct does not amount to gross negligence that is the proximate cause of the injury or damage.'" *Oliver v Smith*, 269 Mich. App. 560, 565 (2006)(*quoting* M.C.L. §691.1407(2)(c)). Gross negligence is conduct "so reckless as to demonstrate a substantial lack of concern for whether an injury results." M.C.L. §691.1407(2)(c). An employee's conduct is "the proximate cause" if it is "the one most immediate, efficient, and direct cause preceding an injury." *Robinson v City of Detroit,* 462 Mich. 439, 459 (2000).

There is evidence Plaintiff suffered a bloody nose and an orbital bone fracture as a result of Defendants' physical assaults. For the reasons already stated, reasonable minds could differ regarding whether Defendants' admitted conduct before Plaintiff was handcuffed and alleged conduct after was "so reckless as to demonstrate a substantial lack of concern for whether an injury" would result.

Defendant's motion for summary judgment on Plaintiff's gross negligence claim is denied.

### C. Assault and Battery

"An assault is defined as any intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *Espinoza v Thomas*, 189 Mich. App. 110, 119 (1991); *Smith v Tolberg*, 231 Mich. App. 256, 260 (1998). "A battery is the wilful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *Id.*

When an alleged assault and battery arises from an arrest, liability turns on whether the arrest was lawful and, if so, whether the amount of force used was reasonable. When effecting a lawful arrest, an officer has the right to use the amount of force reasonably necessary under the circumstances to effect the arrest. *Delude v Raasakka*, 391 Mich. 296, 303 (1974); *Tope v Howe*, 179 Mich. App. 91,106 (1989). "[T]he measure of necessary force is that which an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary." *Brewer v Perrin,* 132 Mich. App. 520, 528 (1984)(*quoting Barrett v United States*, 64 F.2d 148, 149 (D.C. Cir. 1933)(internal quotation marks omitted)). An officer may take reasonable action to protect himself in the course of an arrest or an attempted arrest. *Delude*, 391 Mich. at 303.

Reasonable jurors could disagree regarding whether the force Defendants used to subdue and arrest Plaintiff was reasonable, and there is a question of fact as to whether Defendants struck Plaintiff and threw him into a wall after he was handcuffed and offering no resistance. Defendant's motion for summary judgment is denied on Plaintiff's assault and battery claim as well.

## IV.    CONCLUSION

The Court **ADOPTS** the Magistrate's recommendation and **DENIES** Defendants' Motion for Summary Judgment.

**IT IS ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: March 14, 2008

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on March 14, 2008.

s/Carol A. Pinegar
Deputy Clerk